Filed 5/19/25  In re S.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re S.S., Persons Coming Under the Juvenile Court Law. | B338293 (Consol. w/B339388) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. W.E., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP01650A) |

APPEAL from order of the Superior Court of Los Angeles County.  Tiana J. Murillo, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

Anuradha Khemka, under appointment by the Court of Appeal, for Respondent Minor.

_____

W.E. (Mother) appeals from the trial court's order denying her motion under Welfare and Institutions Code[1] section 388. We affirm the order because the trial court reasonably concluded that Mother did not establish that reopening Mother's family reunification services was in the child's best interests. Mother visited this child inconsistently resulting in an atrophied relation between Mother and child. We affirm.

## BACKGROUND

### I.     Mother's dependency history with S.S.

S.S. is now seven years old. On April 29, 2022, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition alleging Mother placed S.S. and her younger sister, Emilia, at risk of harm because (1) Mother did not protect them from her male companion's physical abuse of S.S.; (2) Mother did not protect the children from the male companion's domestic abuse of Mother; (3) Mother did not protect the children from the male companion's substance abuse; and (4) Mother herself abused substances. When DCFS filed the petition, S.S. was four years old. At the outset of the case, the trial court granted an emergency removal, and DCFS placed S.S. in the home of the foster parents that cared for her throughout the dependency case. However, Emilia and S.S. were placed with two different foster parents. At the time of the jurisdiction and

_____

[1]     All further undesignated statutory citations are to the Welfare and Institutions Code.

2

disposition report, S.S. and her sister remained placed with their respective foster parents.

On June 16, 2022, the trial court found jurisdiction on the theories alleged: Mother's substance abuse; and Mother's failure to protect S.S. and Emilia from the risks associated with Mother's male companion. On August 12, 2022, the trial court removed S.S. from Mother. As a result, S.S. and her sister remained in their two placements with different foster parents. For S.S., the trial court ordered that Mother's visits be monitored, and ordered three visits per week.

During the first six-month reunification period, Mother's visitation was inconsistent. Then Mother requested visits once a week to focus on her programs and her employment. DCFS also noted that Mother cared for her children when she did visit. At the six-month status review, the trial court found Mother's progress to be unsubstantial and terminated Mother's family reunification services. The trial court also set a selection and implementation hearing under section 366.26.

In the report for the section 366.26 hearing filed on June 13, 2023, DCFS noted that Mother visited once a week despite the trial court ordering three visits a week. At some point, Mother's schedule included two visits a week, but Mother was only attending one visit a week. Thereafter, Mother again narrowed her visitation schedule to only a single visit per week. At the time of the June 2023 report, Mother visited once a week for two hours and arrived late to visits. However, the visits were frequently extended, and the visits ran past their scheduled time. On holidays or other special occasions, Mother's visits with S.S. ran as long as six hours.

From July 2022 to May 2023, Mother missed about one third of her weekly visits as she was no longer attempting to visit more than once a week. S.S.'s foster mother assisted in facilitating visits by picking up Mother for visits and driving Mother home or to work after visits. Relatedly, DCFS noted its concern that Mother would not attend visits without the foster mother facilitating visits. In addition to Mother missing visits, the visits that did take place included little communication between Mother and S.S. Mother was also unable to engage with S.S. Mother's relationship with S.S. appeared to be atrophying, and S.S. sought out Mother less frequently for affection as time passed. Despite these challenges, S.S. still missed and loved Mother.

The June 2023 report also summarized phone and video contact, and Mother and S.S. were initially scheduled for three calls a week. However, the calls were halted because Mother did not call. In addition, S.S. declined to talk to Mother on the phone on some occasions.

In the August 2023 permanency planning report, DCFS noted that Mother visited S.S. inconsistently since the last hearing. In addition, Mother's whereabouts were unknown for most of May and June 2023. Thereafter, on July 28, 2023, DCFS created a visitation schedule for Mother, where Mother had in-person visits on Tuesdays for two hours and virtual visits on Sundays for two to three hours. A social worker noted that Mother made minimal effort to engage with S.S. during a visit that the social worker witnessed. According to S.S.'s foster mother, S.S. and Mother did not appear to have a bond.

On August 30, 2023, the trial court identified adoption as the plan for S.S.

In the September 2023 last minute report for the selection and implementation hearing under section 366.26, DCFS noted that Mother had difficulty visiting S.S. because of the distance between S.S.'s placement and Mother's inpatient program. The treatment center was a two-hour drive from S.S.'s placement. In addition, Mother's treatment program would not let her leave without a staff member, and the program had insufficient staff to accompany Mother to visits. After making some adjustments including allowing some visits at Mother's recovery home, visits became more consistent beginning in July 2023. In addition, the updated schedule included two in-person visits a week. DFCS again noted its concerns that Mother and S.S. did not interact in visits, Mother rarely called, Mother's moods were unpredictable in visits, and S.S. increasingly showed less affection towards Mother.

In December 2023, Mother completed her six-month, in-patient substance abuse program. When she completed the in-patient program, DCFS met with Mother to create a new visitation schedule. In January 2023, Mother was eligible to move to a less restrictive facility, but she had some problems with funding. Nonetheless, the new weekly visitation schedule included two in-person visits for three-hours each. In addition, Mother had one three-hour video visit per week, and Mother was free to call S.S. during the week. However, mid-week calls became challenging because of S.S.'s extracurricular activities and homework. From December 27, 2023 to January 25, 2023, Mother visited S.S. one time in-person for one hour. Mother also had one twenty-minute video session, one five-minute video call where Mother called after the appointed time, and one attempted call made after the appointed time where S.S. was unavailable.

In a status review report for the post permanent plan review filed on February 14, 2024, DCFS noted Mother was complying with her case plan for the youngest sibling. DCFS again noted that Mother did not appear to have a bond with S.S., and that S.S. was "almost indifferent" to the idea of seeing Mother. S.S. would also feel sick and throw up prior to visiting Mother on occasion. The visitation log for October to January 2023 reflected inconsistent in-person and video visits.

On April 4, 2024, Mother filed a motion under section 388 asking the trial court to return S.S. to Mother's home or to reinstate family reunification services with overnight or unmonitored visits. In her motion, Mother explained she completed her entire case plan except the 12 Step meetings, and she was attending those. Mother pointed out that S.S. lived with her the first four years of life. In addition, she argued that she and S.S. shared a strong bond, which established that it was in S.S.'s best interest to change the court's prior orders. Mother also attached a declaration providing that S.S. called her "Mommy" and hugged and kissed her when visits began and when they ended. The declaration also provided that Mother brought toys, snacks, and clothing for S.S. on visits. In addition, Mother noted that S.S. cried at the end on a December 2023 visit because S.S. did not want Mother to go and S.S. told Mother that S.S. missed her on another visit. Finally, Mother explained that she was unable to visit S.S. frequently when Mother was in her sober living program.

From late February to early May 2024, Mother missed multiple in-person visits and multiple video visits. The therapist who monitored visits noted that S.S. greeted Mother as a family friend, and that S.S. called Mother by her first name. The

therapist also concluded that Mother and S.S. did not share a bond. The social worker monitored one visit during this period and concluded that Mother and S.S. did not have an attachment. The DCFS report notes that during the visits S.S. played on her own and minimally interacted with Mother.

DCFS prepared a report to address Mother's section 388 motion. S.S. said that she did not always feel happy while visiting Mother, but that she feels sad when she does not visit Mother. When asked if she missed Mother, S.S. said she missed her younger sister. S.S. also indicated she preferred to live with her foster mother instead of Mother while noting that she loved Mother. S.S. also expressed wanting her foster mother present during visits with Mother. In addition, Mother said she visits S.S. once a week on Tuesdays and she does not miss visits. The weekend in-person visits and video visits were cancelled because of Mother's work schedule. Mother also explained her plan to welcome S.S. back into her home including having a bed for her.

In the same report, DCFS noted that S.S.'s youngest sibling, a son who was younger than both Emilia and S.S., had been removed from Mother initially but was back in Mother's care. Because of Mother's progress on her case plan, DCFS recommended to the trial court to close the youngest sibling's case with Mother retaining custody.

In the section 388 report, the foster parents reiterated their view that Mother and S.S. do not share a bond, and that for the last six months, S.S. had not shown excitement for visits. They also indicated that Mother stared at her phone during visits. The social worker also reiterated her perspective that Mother and S.S. did not have a bond. She explained that S.S. asked the foster parents to end Mother's visits early, and Mother spent her

time on the phone while visiting S.S. The social worker said Mother cancelled one visit per month and visited S.S. three times per month.

On May 17, 2024, the trial court held the hearing for Mother's section 388 motion. DCFS recommended partially granting Mother's section 388 motion to reinstate family reunification services for Mother with S.S. Consistent with DCFS's position, Mother narrowed her request and asked that the trial court reinstate family unification services. The trial court's tentative was to deny the motion.

Mother testified that she was living with her sister. Before changing jobs, she worked on Saturdays, which interfered with visits. She played school and soccer with S.S. on visits, S.S. would run toward her and call her "mommy," and S.S. hugged her at the end of visits. Mother also denied that she is on her phone during visits. Mother indicated that S.S. said she missed Mother a lot after Mother completed the drug program. In addition, she visited four to five times a week after leaving her previous job, and she had a strong bond with S.S. However, she conceded that S.S. lost some love for her, and she wanted to get it back. If her motion was granted, Mother's plan was to take S.S. to school, hug her, and make up for lost time.

S.S.'s counsel called the foster mother to testify. She testified that Mother had not texted to check on S.S. the previous month except for S.S.'s birthday. The foster mother also acknowledged that Mother came to S.S.'s birthday party that the foster mother had for S.S. Over the last two years, Mother sent text messages less than once a month regarding S.S. Mother called S.S. for video visits maybe a few times a year.

After hearing argument, the trial court ruled that Mother's progress in her case plan and Mother's custody of the youngest child satisfied Mother's burden to establish changed circumstances.  Regarding S.S.'s best interests, the trial court explained, "[A]t this point, we are even beyond the two-year service date that mother would have otherwise been entitled to under the law.  That would have expired, I believe, last month.  And I am specifically not—finding today that it is not in [S.S.'s] best interest to ask the child to wait six [] additional months for mother to do more services to see if mother and child can reunify.  That is essentially what the Court is being asked to do.  And, on this record, I don't believe that it's in the child's best interest."  The trial court elaborated, "[N]or do I see a robust record or robust evidence to suggest that mom is visiting as much as she can and is making all efforts to visit as much as she can."  The trial court also found the foster mother's testimony more convincing than Mother's.

Thereafter, in a later hearing, the trial court terminated Mother's parental rights over S.S.

## DISCUSSION

**1.    The trial court did not abuse its discretion in denying Mother's section 388 motion**

Mother's notice of appeal encompasses both the termination of her parental rights and the denial of her section 388 motion.  In this appeal, Mother challenges the ruling denying her section 388 motion.  If Mother prevails in her appeal of the section 388 ruling, she asks this court to reverse the termination of her parental rights as well.  S.S. is the respondent who defends the trial court's order on appeal, and DCFS takes no

9

position on the appeal because DCFS recommended that the trial court grant, in part, Mother's motion.

Under section 388, a petitioner may request that a judicial officer modify an earlier dependency order. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 414–415.) In this context, a petitioner has the burden to show: (1) a change of circumstances; and (2) that changing the previous order would be in the child's best interests. (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122.) A section 388 motion "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.*, at pp. 415–416.)

Both Mother and S.S. do not contest the trial court's ruling that Mother established a change of circumstances. Thus, we turn to the trial court's ruling that the proposed change would not be in S.S.'s best interests.

We find no abuse as the record amply supports the trial court's determination that additional family reunification services for Mother were not in S.S.'s best interests. Consistent with the record, the trial court noted that Mother was visiting S.S. infrequently. Further, while Mother testified to the contrary, the social worker, the therapist, and the foster parent all indicated that S.S. had grown distant from Mother and that S.S. and Mother did not interact during visits. The trial court also reasonably concluded that postponing stability for S.S. also weighed against granting Mother's petition. As the Supreme Court explained in considering a section 388 motion, "[I]t is within the court's discretion to decide that a child's interest in stability has come to outweigh the natural parent's interest in the care, custody and companionship for the child." (*In re Jasmon O.*, *supra*, 8 Cal.4th at p. 419.) There, the Supreme

10

Court noted that after an 18-month period where reunification services are available, the primary concern under the law is providing a stable, permanent home for a child.  (*Id.* at p. 421.) Given the record here, the trial court properly exercised its discretion in denying Mother's section 388 petition.

## DISPOSITION

The trial court's order denying Mother's section 388 motion is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.